UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------------x

HESLER ASAF GARCIA LANZA,

                Petitioner(s),

v.

KRISTI NOEM, Secretary, U.S. Department of Homeland
Security,  PAMELA BONDI, U.S. Attorney General,
U.S. Department of Justice,  TODD M. LYONS, Acting
Director, U.S. Immigration and Customs Enforcement,
WILLIAM JOYCE, Acting Field Office Director,
U.S. Immigration and Customs Enforcement and
Removal Operations New York City, JOSEPH EDLOW,
Director, U.S. Citizenship and Immigration Services,
ANTHONY J. LAROCCO, Sheriff, Nassau County
Correctional Center,

                Respondent(s).

--------------------------------------------------------------------x

Civil Action No.
26-cv-0029 (GRB)


## REPLY MEMORANDUM OF LAW IN FURTHER OPPOSITION TO THE PETITION FOR WRIT OF HABEAS CORPUS


JOSEPH NOCELLA, JR.
United States Attorney
Eastern District of New York
271-A Cadman Plaza East
Brooklyn, New York 11201

February 23, 2026


Marika M. Lyons
Assistant U.S. Attorney
(Of Counsel)

**Table of Contents**

**PRELIMINARY STATEMENT** ........................................................................... 1

**ARGUMENT** …………………………………………………………………..2

    **I.**       **Petitioner's Detention is Lawful Under 1225(b)(2)(A)** ........................... 2

    **II.**      **Petitioner Has Received the Process He is Due Under Section 1225**..... 4

    **III.**   **Petitioner Cannot State a Claim For A Substantive Due Process Violation**...... 7

    **IV.**     **The Court Is Not Bound By The *Bautista* Class Action**.......................... 8

    **V.**       **To The Extent Petitioner Seeks Relief Unrelated To His Detention, He Cannot Seek Relief In This Action**.............................................................. 10

**CONCLUSION** ………………………………………………………………… ..10

**PRELIMINARY STATEMENT**

Respondents respectfully submit this reply memorandum of law in further support of their opposition (the "Opposition," ECF No. 11) to the Petition for Writ of Habeas Corpus, ECF No. 1 (the "Petition" or "Pet."), and response to Petitioner's submission (the "Response," ECF No. 12).

There is no dispute Petitioner has never been admitted to the country, which is Congress's definition of an "applicant for admission" under 8 U.S.C. § 1225(a)(1). The fact that he was so successful in sneaking across the border that was not detained by Customs and Border Protection (CBP) or Immigration and Customs Enforcement (ICE) until what he alleges was decades after sneaking across, is not a basis for converting his lack of admission into benefits – discretionary detention and a bond hearing before an immigration judge (IJ) -- that he now lacks.  Indeed, Congress reformed the Immigration and Nationality Act (INA) specifically to prevent an alien who entered unlawfully and was later discovered from having more benefits -- by being able to seek release from detention through a bond as opposed to mandatory detention -- than an alien who similarly lacked documents but presented himself at a port of entry.  Petitioner remains an applicant for admission under 8 U.S.C. § 1225(a)(1), and pursuant to § 1225(b)(2)(A) he is subject to mandatory detention during the pendency of removal proceedings as numerous local judges, and the only Circuit Court of Appeals to rule on this issue, have held.  *See, e.g.*, *Buenrostro-Mendez v. Bondi*, -- F.4th -- 2026 WL 323330 (5th Cir. Feb. 6, 2026); *Samaashvili v. Flanagan ,*No. 25-6178, 2026 WL 377574 (E.D.N.Y. Feb. 11, 2026) (Cogan, J.); *Alvarado Quezada v. Francis*, No. 26-387, 2026 WL 380711 (S.D.N.Y. Feb. 11, 2026) (Cronan, J.); *Arana v. Arteta*, No. 26-240, 2026 WL 279786 (S.D.N.Y. Feb. 3, 2026) (Woods, J.); *Acosta v. Arteta*, No. 25-9916, 2026 WL 263470 (S.D.N.Y. Feb. 2, 2026) (Vyskocil, J.); *Espinoza Lopez v. Noem*, No. 26-345, 2026 WL 266597 (S.D.N.Y. Feb. 2, 2026) (Rearden, J.); *Perez Quintero, v. Francis*, No. 25-10107, 2026 WL 265921

1

(S.D.N.Y. Feb. 2, 2026) (Vyskocil, J.); *Weng v. Genalo*, No. 25-09595, 2026 WL 194248 (S.D.N.Y. Jan. 25, 2026) (Rearden, J.); *Chen v. Almodovar*, No. 25-9670, 2026 WL 100761 (S.D.N.Y. Jan. 14, 2026) (Cronan, J.); *Liang v. Almodovar*, No. 25-9322, 2025 WL 3641512 (S.D.N.Y. Dec.15, 2025) (Vyskocil, J.), *appeal filed*; *Chen v. Almodovar*, No. 25-8350, 2025 WL 3484855 (S.D.N.Y. Dec. 4, 2025) (Vyskocil, J.), *appeal filed*.[1]

## ARGUMENT

### I.    Petitioner's Detention is Lawful Under 1225(b)(2)(A)

As the Respondents have argued, the INA now defines admission as *lawful* entry, not just entry, and something other than *presence. See* Opp at 3-6. Petitioners fail to respond to that argument. Respondents have further argued that "seeking admission" in section 1225(b)(2)(A) does not impose additional restrictions in the statutes. *See* Opp. at 8-10.  While Petitioner asserts he is not "seeking admission" (Response at 17), he does not address the Respondents' arguments regarding the use of the term "seeking admission" in the INA.  Additionally, Petitioner has not addressed the government's explanation in the Opposition regarding the purported surplusage in the INA caused by the Laken Riley Act, *see* Opp. at 5.  Since that Opposition was filed on January 26, 2026, a number of additional courts have adopted Respondents' statutory construction of Section 1225.

Earlier this month, the Fifth Circuit Court of Appeals, in the first decision by a Court of Appeals squarely on the construction of 8 U.S.C. § 1225, found that aliens who are applicants for admission under 8 U.S.C. § 1225(a) are subject to mandatory detention under § 1225(b), and are not eligible for a bond. *Buenrostro-Mendez* -- F.4th, --, 2026 WL 323330.  The Fifth Circuit held

---

[1] An expedited appeal in the Second Circuit will be fully-briefed March 3, 2026 in *Da Cunha v Moniz,* No.25-3141 (2d Cir.). Appeals were argued earlier this month in the Seventh and Eighth Circuits, and appeals are also pending in multiple additional circuits.

that, *inter alia*, applicants for admission are necessarily "seeking admission" such that they are subject to mandatory detention under Section 1225(b)(2)(A); that this interpretation does not render other statutory provisions superfluous; that the government's past practice inconsistent with statutory authority could not foreclose the government from now exercising its authority consistent with the statutes enacted by Congress; and that the government's interpretation is consistent with the way those statutes were amended by Congress. *Id.* at *6-8. The Fifth Circuit *inter alia* discussed how its interpretation squared with the Supreme Court's holding in *Jennings v. Rodriguez,* 583 U.S. 281 (2018). *See Buenrostro-Mendez,* -- F.4th at --, 2026 WL 323330, at *8 (citing *Jennings*, 583 U.S. at 296).

Adding to the recent raft of decisions favoring the government's interpretation, *see* Opp. at p. 12 and n.9, less than two weeks ago, on February 11, the Honorable Brian M. Cogan of this District also endorsed the government's interpretation of 8 U.S.C. § 1225. *See Saamishvili*, 2026 WL 377574. The Court found that the Petitioner, who entered the country unlawfully, was subject to "the mandatory detention requirement of Section 1225(b)(2)(A)," even where ICE "let him go" when he was initially encountered in 2011 and required periodic check ins. *Id.* at *1. Carefully reviewing the history of the INA, including the enactment of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), Pub. L. No. 104-208, Div. C, 110 Stat. 3009, 3009-546, the Honorable Brian M. Cogan noted that "[p]ost-IIRIRA, 'both aliens arriving at the border and aliens already present in the United States without inspection are deemed 'applicants for admission,' . . . who must 'be inspected by immigration officers' to determine their admissibility." *Id.* at *2 (citing *Cruz-Miguel v. Holder*, 650 F.3d 189, 197 (2d Cir. 2011)). The

3

court then reviewed the rest of the statute, finding that "[t]he phrase 'shall be detained' is quite clear," even though the present time frame was long after the alien had crossed the border. *Id*.[2]

## II.    Petitioner Has Received the Process He is Due Under Section 1225

As set forth in the government's Opposition, applicants for admission into the United States – like Petitioner – have limited process afforded by Congress. *See* Opposition at pp. 18-23. That process includes mandatory detention pending removal, and access to 8 U.S.C. § 1182(d)(5)(A) parole (not bond). *See* Opp. at 4-5, which he continues to receive.[3]

Petitioner's assertion that "due process rights attach to *all* noncitizens" (Petition p. 8) does nothing to alter the fact that an alien, and in particular an applicant for admission, is entitled to less process than a citizen, or even other categories of aliens, as the cases Petitioner cites recognize. *See, e.g., Mathews v. Diaz*, 426 U.S. 67, 78–80 (1976) ("The fact that all persons, aliens and citizens alike, are protected by the Due Process Clause does not lead to the further conclusion that all aliens are entitled to enjoy all the advantages of citizenship or, indeed, to the conclusion that all aliens must be placed in a single homogeneous legal classification. For a host of constitutional and

---

[2] Additionally, since Respondents filed their Opposition memorandum on January 26, there have been at least five additional decisions from the United States District Court for the Southern District of New York adopting Respondents' construction. *See supra* p. 1-2.

[3] It cannot be disputed that Petitioner has separately received, and will continue to receive, substantial process before the immigration court in connection with his removal proceedings, including access to counsel and the opportunity to present his case before an immigration judge. Petition p. 5. To the extent Petitioner seeks to raise issues related to the deadlines in his immigration court proceeding (*id.*), this Court is not the appropriate venue. *See generally* 8 CFR 1003 (regulations governing immigration court proceedings, providing for appeals to the Board of Immigration Appeals).

Additionally, to the extent Petitioner suggests there his arrest and detention before he was placed in removal proceedings was improper (Response at 10), that procedure comports with Section 1225, which requires detention "for removal proceedings." 8 U.S.C. § 1225(b)(2)(a). Thus, the statute specifically contemplates that removal proceedings will be initiated after detention.

4

statutory provisions rest on the premise that a legitimate distinction between citizens and aliens may justify attributes and benefits for one class not accorded to the other; and the class of aliens is itself a heterogeneous multitude of persons with a wide-ranging variety of ties to this country. In the exercise of its broad power over naturalization and immigration, Congress regularly makes rules that would be unacceptable if applied to citizens. The exclusion of aliens and the reservation of the power to deport have no permissible counterpart in the Federal Government's power to regulate the conduct of its own citizenry."); *see also Saamishvili*, 2026 WL 377574, at *1 (citing *Singh v. Quarantillo*, No. 25-cv-6392, 2026 WL 32759, at *3 n.3 (E.D.N.Y. Jan. 6, 2026)) ("How much process someone is due depends on circumstance, and immigration law is one sphere where that amount is minimal.").

Respondents respectfully disagree with decisions cited by Petitioner for the proposition that individuals subject to Section 1225 are entitled to more process than that explicitly provided by the statute. Response at p. 9 (citing *Diallo v. Maldonado*, No. 25-cv-5740, 2025 WL 3158295, at *5 (E.D.N.Y. Nov. 12, 2025), *Savane v. Francis*, 801 F.Supp.3d 483, 491 (S.D.N.Y. 2025)). Both *Diallo* and *Savane* deemed ICE's prior release of the petitioner to constitute parole under Section 1182(d)(5)(A), and therefore found that ICE taking petitioners back into physical custody without a parole-revocation assessment violated the petitioner's due process rights. *See Diallo*, 2025 WL 3158295, at *5; *Savane*, 801 F.Supp.3d at 491. As an initial matter, Respondents note that Petitioner's case is distinguishable from *Diallo* and *Savane* because unlike those cases, Petitioner here was never encountered, detained or released by ICE before the detention that gave rise to this Petition. Opposition at p. 9. Thus, there can be no argument that ICE previously paroled Petitioner, constructively or otherwise. Moreover, in a more recent case where, as here, there was no parole of the Petitioner, the same district judge that decided *Savane* the Honorable Gregory Woods,

5

decided the statutory construction in the government's favor. *Arana*, 2026 WL 279786, at \*1 ("The Court's decision in *Savane* was explicitly cabined to the particular record and question presented in that case—whether parole, once granted pursuant to 8 U.S.C. § 1182, can be revoked without *any* notice or process given Respondents' admitted noncompliance with the INA's implementing regulations governing such parole. Accordingly, *Savane* does not control the outcome of Mr. Arana's case.").[4]  In any event, other courts have criticized the finding of "constructive parole" in *Diallo* and *Savane*.  In *Saamishvili,* Judge Cogan noted that "Section 1182(d)(5)(A) allows for parole 'only on a case-by-case basis for urgent humanitarian reasons or significant public benefit,' which strikes the Court as a high bar," and then found that "it treads too far to constructively parole petitioner under Section 1182(d)(5)(A) when a more plausible, less drastic explanation for his release and return to physical custody exists" – namely, that the Executive enforced the mandatory detention requirement with a "velvet glove" prior to 2025.  *Id.*  Respondents respectfully submit that Judge Cogan's assessment is correct.

Finally, Petitioner's suggestion that he was entitled to additional process in connection with the revocation of deferred action is not properly raised in this habeas proceedings (*see infra* Section V), and in any event, is incorrect.  Even considering Petitioner's assertion that his due process rights were violated when his discretionary granted of deferred action was "terminated without proper process" (Response at p. 9-10), his argument fails.  Petitioner received deferred action as a matter of discretion. *See, e.g.,* https://www.uscis.gov/sites/default/files/document/policy-manual-updates/20220307-SIJAndDeferredAction.pdf (last accessed January 13, 2026) ("SIJS Policy Alert").  Pursuant to that guidance, USCIS "reserves the right to terminate the grant of [DA] . . .

---

[4] In recent cases before the *Diallo* bench, the Honorable Diane Gujarati, where as here there was no parole, Judge Gujarati has not dismissed the petition and those cases are sub judice.

at any time as a matter of discretion," including where "USCIS determines the favorable exercise of discretion is no longer warranted." USCIS Policy Manual, vol. 6, pt. J., ch. 4 ¶ G.2, in effect in March 2022 (available at https://web.archive.org/web/20250107084936/https://www.uscis.gov/policy-manual/volume-6-part-j-chapter-4). There are no criteria that USCIS must consider in deciding whether to terminate deferred action. *Id.* There is no process that must be followed. *Id.* Finally, and most importantly, because the decision to grant, deny, or rescind deferred action is "committed to [USCIS'] discretion by law," the Court would lack jurisdiction to review under the Administrative Procedure Act the revocation of Petitioner's DA. *See* 5 U.S.C. § 701(a)(2).

**III.    Petitioner Cannot State a Claim For A Substantive Due Process Violation**

As Respondents argued in the Opposition, Petitioner cannot state a substantive due process claim including because, *inter alia,* no court has ever held that an alien who has not been lawfully admitted to the United States holds a fundamental right to remain at liberty in this country. Opposition at 21-23. Without directly addressing this argument, Petitioner asserts that, even though he has not been lawfully admitted, because he has lived in the country and is a "hair's breadth" from applying for permanent residence, he has a protected liberty interest. Response at p. 11. However, there are multiple flaws with this argument. First, it is factually spurious. In order to apply for adjustment of status, Petitioner must first obtain an employment-based fourth preference visa. *See* Opposition n. 17. There is currently a backlog for this category of visas, with a current priority date of January 2021. *Id.*; *see also* https://travel.state.gov/content/dam/visas/Bulletins/visabulletin_February2026.pdf (section 5.A., "Final Action Dates for Employment-Based Preference Cases"). That means that Petitioner, whose SIJ petition was granted in November 2022, still needs to wait over a year for to become eligible for a visa, and in turn to be eligible to apply for adjustment of status. Second, even if he were

7

immediately eligible to apply for adjustment of status, he would not have a protected liberty interest in a grant of adjustment of status because it is a discretionary benefit. The Supreme Court has made clear that there is no protected interest in a governmental benefit if "government officials may grant or deny it in their discretion." *Town of Castle Rock v. Gonzales*, 545 U.S. 748, 756 (2005). Here, the granting of adjustment of status to that of a lawful permanent resident is a discretionary benefit. INA § 245(a); *Krasniqi v. Holder*, 316 F. App'x 7, 8 (2d Cir. 2009)("Krasniqi did not have a constitutionally protected liberty or property interest in a grant of adjustment of status because it is a discretionary form of relief.").

For the same reasons, Petitioner's previous grant of deferred action was not a protected liberty interest, because it was entirely discretionary for USCIS to grant or deny or revoke it at any time or for any reasons. *Castle Rock*, 545 U.S. at 756.[5]

Finally, to the extent Petitioner claims he has a protected interest in living in the United States because *he has been living* in the United States, he does not. The benefit Petitioner obtained of living in the United States was one he enjoyed, but did not have an entitlement to. In fact, according to the applicable statute, he has always been subject to mandatory detention. 8 U.S.C. § 1225. That the Executive did not previously enforce this requirement with respect to the Petitioner does not mean that the Executive cannot now or that Petitioner has now obtained a protected interest in being free from Section 1225 detainment. *Saamishvili,* 2026 WL 377574, at *3.

**IV.    The Court Is Not Bound By The *Bautista* Class Action**

---

[5]    Additionally, as stated in the Government's Opposition, even if Petitioner still had deferred action, it would not prevent his detention. Opposition p. 24. Thus, the termination of his deferred action is irrelevant to the question of whether Petitioner's detention was lawful under Section 1225.

Finally, the *Bautista* action does not obviate the need for an independent assessment in this action. *See Bautista v. Santa Cruz,* No. 25-cv-1873, 2025 WL 3288403 (C.D. Cal. Noc. 25, 2025), *on appeal*.[6]   In *Baustista,* the court certified a class of individuals who, *inter alia*, crossed the border illegally and issued a declaratory judgment regarding their access to bond hearings. *Bautista*, 2025 WL 3288403, at \*9. Petitioner asserts that he is a member of the class of individuals certified in *Bautista*, and that this means he is entitled to a bond hearing.  Response at p. 17-18. However, regardless of whether Petitioner falls into the definition of the class certified in *Baustista*, this Court is not bound by any decision issued in that action.  As stated by the court in *Alvarado Quezada,* "the Central District of California [in Bautista] acknowledged that because its 'jurisdiction to grant habeas relief is limited to those within the judicial district,' it 'cannot order nationwide release or bond hearings for ... class members, especially so to those confined outside th[at] judicial district.'" *Alvarado Quezada*, 2026 WL 380711, at \*4 (citing *Bautista*, 2025 WL 3288403, at \*30).   Additionally, "[t]here are questions concerning the lawfulness of that declaratory judgment and whether the Government is bound by it." *Id.*; *see also Calderon Lopez v. Lyons*, --- F. Supp. 3d ----, No. 1:25-CV-226-H, 2025 WL 3683918, at \*14 (N.D. Tex. Dec. 19, 2025) (concluding that orders in *Bautista* were "advisory" and "violate[d] the INA's limits on judicial review"); *id.* at \*7 n.14 ("[B]ecause the Central District [of California] lacks jurisdiction under the INA to hear the APA challenge to the DHS policy, its December 18 order lacks the authority necessary to vacate the policy.").  Even setting aside whether the Government is bound Bautista, this court is not, because it "cannot be bound to grant habeas relief by another judge's

---

[6] Recently in *Bautista,* 5:25-cv-01873-SSS-BFM the district court on February 18, 2026 issued a new decision vacating *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216, 222–24 (BIA 2025).  This affects the government's argument on statutory construction not at all, as necessarily, following *Loper Bright,* the government's statutory construction argument must stand independent of agency interpretation of the INA.

ruling in another district." *Id.*; *see also Quintero*, 2026 WL 265921, at \*6 ("The *Bautista* court properly recognized that jurisdiction over habeas claims lies only in the district of confinement. As such, the *Bautista* order does not bind this Court with respect to Petitioner's request for habeas relief."). Therefore, this Court is not bound by *Bautista* and should independently assess Petitioner's claim for habeas relief.

### V. To The Extent Petitioner Seeks Relief Unrelated To His Detention, He Cannot Seek Relief In This Action

The Petition, in sum and substance, seeks an order finding that Petitioner's detention is unlawful. *See generally* Petition. To the extent the Response can be read to raise issues or claims unrelated to the issue of whether Petitioner's detention was lawful, for example related to a fee assessed against him, such claims cannot be raised at this juncture, both because a habeas action is limited to reviewing the appropriateness of detention (*see, e.g., Preiser v. Rodriguez*, 411 U.S. 475, 494 (1973) ("In the case of a damages claim, habeas corpus is not an appropriate or available federal remedy.")) and because Petitioner cannot amend his complaint via briefing (*see, e.g., Jones v. New Penn Fin., LLC*, No. 19-CV-1493, 2020 WL 8771252, at \*5 (E.D.N.Y. Nov. 13, 2020) (Kuo, M.J.) (Report and Recommendation) (citing *Trachtenberg v. Failedmessiah.com*, 43 F. Supp. 3d 198, 206 (E.D.N.Y. 2014) (Cogan, J.)), *adopted*, 2021 WL 405888 (E.D.N.Y. Feb. 5, 2021) (Vitaliano, J.)) (a plaintiff may not amend her or his complaint on a motion to dismiss that complaint).

### CONCLUSION

For the reasons stated herein and in the Opposition, the Petition should be denied.

10

Dated:      Brooklyn, New York
            February 23, 2026

                                 Respectfully submitted,

                                 JOSEPH NOCELLA, JR.
                                 UNITED STATES ATTORNEY
                                 Eastern District of New York
                                 *Attorney for Respondents*
                                 271-A Cadman Plaza East
                                 Brooklyn, New York 11201

                   By:     */s/ Marika M. Lyons*
                                 Marika M. Lyons
                                 Assistant United States Attorney
                                 (718) 254-6484
                                 Marika.lyons@usdoj.gov